**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LEINANI DESLANDES, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 17-cv-04857 |
| v. | ) ) | Judge Jorge L. Alonso |
| | ) | Magistrate Judge Jeffrey Cole |
| McDONALD'S USA, LLC, a Delaware limited liability company, McDONALD'S CORPORATION, a Delaware corporation; and DOES 1 through 10, inclusive, | ) ) ) ) ) | |
| Defendants. | ) | |


**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ALLEGATIONS IN THE AMENDED COMPLAINT ...................................................... 3

ARGUMENT ..................................................................................................................... 5

I.   Rule 12(b)(6) Motion To Dismiss Standard ............................................................. 5

II.  The Complaint Fails To State A Claim Under The Sherman Act. ........................... 6

    A.  Sherman Act Standards ..................................................................................... 6

    B.  Plaintiff Fails To Plead A Plausible Sherman Act Claim Under Any Standard ................ 8

        1.  The *Per Se* Standard Does Not Apply To Restraints On Employment Within The Franchise Context ........................................................................ 8

        2.  Plaintiff Fails To Allege A Plausible Horizontal Agreement ..................................... 11

        3.  The Complaint Does Not Allege A Rule Of Reason Violation ................................ 15

III. The Complaint Fails To State Illinois State Law Claims ...................................... 19

    A.  The IAA Does Not Permit Claims Based On Labor ...................................... 19

    B.  The ICFA Claim Also Fails For Numerous Reasons ...................................... 20

IV. Plaintiff Lacks Standing To Assert Claims For Injunctive Or Declaratory Relief. ................ 21

CONCLUSION .................................................................................................................. 21

# TABLE OF AUTHORITIES

## Cases

*Agnew v. Nat'l Collegiate Athletic Ass'n*,
    683 F.3d 328 (7th Cir. 2012) ...................................................................3, 6, 7, 16

*Allstate Indem. Co. v. ADT LLC*,
    110 F. Supp. 3d 856 (N.D. Ill. 2015) ....................................................................4

*Appraisers Coal. v. Appraisal Inst.*,
    845 F. Supp. 592 (N.D. Ill. 1994) ...................................................................19, 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................5, 11

*AT&T Corp. v. JMC Telecom, LLC*,
    470 F.3d 525 (3d Cir. 2006)................................................................................15

*Avery v. State Farm Mut. Auto. Ins. Co.*,
    216 Ill. 2d 100 (2005) ........................................................................................21

*Aydin Corp. v. Loral Corp.*,
    718 F.2d 897 (9th Cir. 1983) ................................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................5, 6, 11, 15, 19

*Besser Pub. Co. v. Pioneer Press, Inc.*,
    571 F. Supp. 640 (N.D. Ill. 1983) .......................................................................18

*Bogan v. Hodgkins*,
    166 F.3d 509 (2d Cir. 1999).................................................................................9

*Burke v. 401 N. Wabash Venture, LLC*,
    714 F.3d 501 (7th Cir. 2013) ................................................................................4

*Cal. Dental Assoc. v. FTC*,
    526 U.S. 756 (1999)..............................................................................................7

*Cesnik v. Chrysler Corp.*,
    490 F. Supp. 859 (M.D. Tenn. 1980)..................................................................2, 9

*Chicago Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n*,
    95 F.3d 593 (7th Cir. 1996) .............................................................................1, 15

*Chicago Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n*,
    961 F.2d 667 (7th Cir. 1992) ................................................................................7

*Coleman v. Gen. Elec. Co.*,
    643 F. Supp. 1229 (E.D. Tenn. 1986), *aff'd*, 822 F.2d 59 (6th Cir. 1987) ...............................9

*Cont'l T.V., Inc. v. GTE Sylvania, Inc.*,
    433 U.S. 36 (1977) ...............................................................................................1, 6, 7, 8

*Crichton v. Golden Rule Ins. Co.*,
    576 F.3d 392 (7th Cir. 2009) ...............................................................................................21

*In re Dairy Farmers of Am., Inc.*,
    767 F. Supp. 2d 880 (N.D. Ill. 2011) ...............................................................................18

*Digital Equip. Corp. v. Uniq Digital Techs., Inc.*,
    73 F.3d 756 (7th Cir. 1996) ...............................................................................................17

*Eichorn v. AT&T Corp.*,
    248 F.3d 131 (3d Cir. 2001) .................................................................................1, 3, 9, 16, 17

*In re Flat Glass Antitrust Litig.*,
    385 F.3d 350 (3d Cir. 2004) ...............................................................................................14

*Gaebler v. N.M. Potash Corp.*,
    285 Ill. App. 3d 542 (1996) ...............................................................................................3, 20

*Generac Corp. v. Caterpillar Inc.*,
    172 F.3d 971 (7th Cir. 1999) ...............................................................................................17

*Hess v. Kanoski & Assocs.*,
    668 F.3d 446 (7th Cir. 2012) ...............................................................................................20

*In Re High Fructose Corn Syrup Antitrust Litig.*,
    295 F.3d 651 (7th Cir. 2002) ...............................................................................................14

*House of Brides, Inc. v. Alfred Angelo, Inc.*,
    No. 11-7834, 2014 WL 64657 (N.D. Ill. Jan. 8, 2014) ...............................................17

*Illinois Corp. Travel, Inc. v. Am. Airlines, Inc.*,
    889 F.2d 751 (7th Cir. 1989) ...............................................................................................13

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010) ...............................................................................................15

*Int'l Equip. Trading, Ltd. v. AB SCIEX LLC*,
    No. 13-1129, 2013 WL 4599903 (N.D. Ill. Aug. 29, 2013) ...................................18

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
    626 F.3d 1327 (11th Cir. 2010) ...............................................................................................14

*Kelsey K. v. NFL Enters. LLC*,
No. C 17-00496 WHA, 2017 WL 3115169 (N.D. Cal. July 21, 2017) ...................................12

*Krehl v. Baskin-Robbins Ice Cream Co.*,
664 F.2d 1348 (9th Cir. 1982) ........................................................................................11

*Laughlin v. Evanston Hosp.*,
133 Ill. 2d 374 (1990) .....................................................................................................20

*Law Bulletin Pub. Co. v. Rodgers*,
No. 87 C 873, 1987 WL 16617 (N.D. Ill. Sept. 1, 1987).........................................................18

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
551 U.S. 877 (2007)......................................................................................1, 3, 7, 8, 10

*Lektro-Vend Corp. v. Vendo Co.*,
660 F.2d 255 (7th Cir. 1981) ...........................................................................................9

*Marion HealthCare LLC v. S. Ill. Healthcare*,
No. 12-00871, 2013 WL 4510168 (S.D. Ill. Aug. 26, 2013).............................................18, 19

*Menasha Corp. v. News Am. Mktg. In-Store*,
238 F. Supp. 2d 1024 (N.D. Ill. 2003), *aff'd*, 354 F.3d 661 (7th Cir. 2004) ..........................15

*Midwestern Waffles, Inc. v. Waffle House, Inc.*,
734 F.2d 705 (11th Cir. 1984) ....................................................................................11, 18

*N. Pac. Ry. Co. v. United States*,
356 U.S. 1 (1958)............................................................................................................6

*Nichols v. Spencer Int'l Press, Inc.*,
371 F.2d 332 (7th Cir. 1967) .................................................................................1, 8, 10

*O'Regan v. Arbitration Forums, Inc.*,
121 F.3d 1060 (7th Cir. 1997) .....................................................................................3, 19

*Phillips Getschow Co. v. Green Bay Brown Cty. Prof'l Football Stadium Dist.*,
270 F. Supp. 2d 1043 (E.D. Wis. 2003)..............................................................................16

*Photovest Corp. v. Fotomat Corp.*,
606 F.2d 704 (7th Cir. 1979) ..........................................................................................16

*Polk Bros., Inc. v. Forest City Enters., Inc.*,
776 F.2d 185 (7th Cir. 1985) ............................................................................................9

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*,
615 F.3d 412 (5th Cir. 2010) ..........................................................................................17

*Sheridan v. Marathon Petroleum Co. LLC*,
    530 F.3d 590 (7th Cir. 2008) ................................................................17, 18

*Subsolutions, Inc. v. Doctor's Assocs.*,
    62 F. Supp. 2d 616 (D. Conn. 1999).........................................................17

*In re Sulfuric Acid Antitrust Litig.*,
    703 F.3d 1004 (7th Cir. 2012) ........................................................6, 10, 15

*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008) .....................................................................6

*Texaco Inc. v. Dagher*,
    547 U.S. 1 (2006)................................................................................3, 7, 15

*In re Text Messaging Antitrust Litig.*,
    630 F.3d 622 (7th Cir. 2010) ......................................................................6

*Thrasher-Lyon v. Ill. Farmers Ins. Co.*,
    861 F. Supp. 2d 898 (N.D. Ill. 2012) ...................................................20, 21

*Todd v. Exxon Corp.*,
    275 F.3d 191 (2d Cir. 2001)........................................................................18

*United States v. E.I. du Pont de Nemours & Co.*,
    351 U.S. 377 (1956)...............................................................................16, 17

*Valley Liquors, Inc. v. Renfield Imps., Ltd.*,
    822 F.2d 656 (7th Cir. 1987) .....................................................................16

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)................................................................................21

*Will v. Comprehensive Accounting Corp.*,
    776 F.2d 665 (7th Cir. 1985) .....................................................................11

*Williams v. I.B. Fischer Nev.*,
    794 F. Supp. 1026 (D. Nev. 1992), *aff'd*, 999 F.2d 445 (9th Cir. 1993) ........................1, 8, 11

**Statutes**

15 U.S.C. § 1 ...................................................................................................5, 6

740 Ill. Comp. Stat. 10/1 ..............................................................................5, 19

740 Ill. Comp. Stat. 10/4 ...................................................................................19

815 Ill. Comp. Stat. 505/1 .............................................................................5, 20

**Other Authorities**

Philip Areeda & Herbert Hovenkamp, Fundamentals of Antitrust Law .......................................11

## EXHIBIT LIST

Exhibit 1:     Excerpts from McDonald's 2003 Franchise Disclosure Document (including only the cover page, table of contents, Item 1, and Exhibit B (traditional franchise agreement)).

## INTRODUCTION

The Amended Complaint purports to assert a *per se* antitrust claim alleging that every McDonald's franchise and company-owned restaurant that ever existed collectively agreed to suppress employee wages by not hiring or soliciting each other's employees. But employee no-hire agreements—even as between horizontal competitors—are decidedly not *per se* unlawful under long-standing and uncontroverted Seventh Circuit law holding that such agreements "are tested by a standard of reasonableness." *See Nichols v. Spencer Int'l Press, Inc.*, 371 F.2d 332, 333-34, 337 (7th Cir. 1967); *see also Eichorn v. AT&T Corp.*, 248 F.3d 131, 147 (3d Cir. 2001) (rule of reason applies to horizontal no-hire agreements, and noting that "there are no Supreme Court cases nor any federal cases that have applied the per se rule in similar factual circumstances").

The Amended Complaint alleges that the supposed horizontal agreement is evidenced by the standard McDonald's franchise contract, which included a no-hire and non-solicitation provision. But that alleged provision in the standard franchise contract is a *vertical* restraint within a franchise system. With that context in mind, the no-hire and non-solicitation provision is eminently reasonable: it "prevent[s] the franchises from 'raiding' one another's [ ] employees after time and expense have been incurred in training them." *Williams v. I.B. Fischer Nevada*, 794 F. Supp. 1026, 1029 (D. Nev. 1992), *aff'd*, 999 F.2d 445 (9th Cir. 1993). Restraints that reduce free-riding at the franchise (*i.e.*, intrabrand) level of the McDonald's system encourage franchises to invest in labor and services that promote McDonald's products, thereby fostering *interbrand* competition between McDonald's, Subway, Whole Foods and the like—"the primary concern of antitrust law." *Cont'l T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 52 n.19 (1977); *see also Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007); *Chicago Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 95 F.3d 593, 598 (7th Cir. 1996) ("[N]o one expects a

McDonald's outlet to compete with other members of the system by offering pizza."). Restraints like these also encourage individual restaurants to retain, develop and promote their employees, which in turn enhances McDonald's customer service and quality. *See Cesnik v. Chrysler Corp.*, 490 F. Supp. 859, 867 (M.D. Tenn. 1980) (recognizing that a no-hire agreement "possessed the virtue of helping [an employer] secure trained employees who could carry on the business with minimal disruption"). Given these obvious procompetitive justifications for the alleged no-hire and non-solicitation provision, nothing in Plaintiff's complaint is appropriately challenged as *per se* unlawful.

Even if the *per se* claim did not fail here as a matter of law (although it does), the Amended Complaint also fails to allege a plausible and coherent horizontal conspiracy. Relying on conclusory language devoid of *factual* allegations, the complaint alleges that every McDonald's franchise and company-owned restaurant that ever existed somehow reached a meeting of the minds "to suppress the wages of" McDonald's employees "throughout the United States," by refusing to hire each other's employees. First Am. Compl. ¶ 5 (hereinafter "FAC"). But that theory is implausible on its face because it would involve literally thousands of decision-makers dispersed throughout the country, and the complaint alleges absolutely *nothing* about any meetings, conversations, or communications among them where they could have (or did) reach an *agreement* to suppress employee wages, much less to do so in the means Plaintiff alleges. Moreover, Plaintiff's own allegation that another McDonald's restaurant was offering a salary *23% higher* than that paid by the restaurant in which she worked suggests significant salary competition from one restaurant to another notwithstanding the alleged restraints on employment solicitation and hiring. FAC ¶ 129. Thus, there is no factual basis for the complaint's conclusory allegation that the mere existence of those alleged restraints "reflects a naked horizontal restraint

of competition." *E.g., id.* ¶¶ 1, 11, 86.

For those reasons, the rule of reason—and not the *per se* or quick look rules—applies, *Leegin*, 551 U.S. at 886 (rule of reason applies to vertical restraints), and Count I should be dismissed with prejudice, *see Texaco Inc. v. Dagher*, 547 U.S. 1, 6 n.2 (2006) (refusing to analyze claim under rule of reason when plaintiffs put forth solely a *per se* claim). But if Plaintiff argues that she has pleaded a rule of reason claim in the alternative, she is incorrect. She has alleged no relevant geographic market over which Defendants have market power. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012) (rule of reason requires allegations "that an agreement or contract has an anticompetitive effect on a given market within a given geographic area"). And the suggestion that "employment with non-McDonald's brands is not a reasonable substitute for McDonald's employees" (FAC ¶¶ 110-114 & header) is negated by Plaintiff's own alleged experience, which establishes that she readily found employment outside the McDonald's brand when she chose to do so (FAC ¶¶ 70-71). *Cf. Eichorn*, 248 F.3d at 147 ("By defining the market so narrowly that it only includes the defendants, plaintiffs' proffered geographic and product markets are unrealistic."). Count I should be dismissed.

Counts II and III—asserting claims under Illinois law—fare no better. The Illinois Antitrust Act ("IAA") explicitly does not apply to labor services. *O'Regan v. Arbitration Forums, Inc.*, 121 F.3d 1060, 1066 (7th Cir. 1997). And Plaintiff cannot use the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") as a backdoor enforcement mechanism for an antitrust claim not cognizable under the IAA. *Gaebler v. New Mexico Potash Corp.*, 285 Ill. App. 3d 542, 544 (1996). Finally, Plaintiff lacks standing to seek declaratory or injunctive relief because she is a former employee who has not alleged ongoing injury. The complaint should be dismissed.

## ALLEGATIONS IN THE AMENDED COMPLAINT

Defendant McDonald's Corporation is the "parent [of] and predecessor [to]" Defendant

McDonald's USA, LLC. FAC ¶ 15. Together, Defendants operate a system of McDonald's restaurants, whereby "thousands" of privately owned companies sign franchise agreements with McDonald's USA, LLC and thereby operate McDonald's restaurants throughout the United States as franchisees. *Id.* ¶¶ 15, 58. Those franchisees are not named as defendants in the complaint, but are alleged to be "co-conspirators." *Id.* ¶ 17.

Plaintiff alleges that Paragraph 14 of the "standard franchise agreement" between McDonald's USA, LLC and each franchisee ("Paragraph 14") states:

> ***Interference With Employment Relations of Others***. During the term of this Franchise, Franchisee shall not employ or seek to employ any person who is at the time employed by McDonald's, any of its subsidiaries, or by any person who is at the time operating a McDonald's restaurant or otherwise induce, directly or indirectly, such person to leave such employment. This paragraph 14 shall not be violated if such person has left the employ of any of the foregoing parties for a period in excess of six (6) months.

FAC ¶¶ 87, 89; *see also* Ex. 1, McDonald's Franchise Disclosure Document, at Ex. B ¶ 14.[1]

The complaint also alleges that approximately 10% of McDonald's U.S. restaurants are McDonald's "company-operated stores" ("McOpCo companies"). *See* FAC ¶¶ 3, 21, 24-25, 77, 83.[2] The complaint alleges that McDonald's "applied" Paragraph 14 to its McOpCo company restaurants, and that they are also co-conspirators. *Id.* ¶¶ 17, 88.

Plaintiff alleges that she was employed in various roles by one McDonald's franchisee— Bam-B Enterprises of Central Florida, Inc. ("Bam-B")—in Florida from 2009 to January 2016.

---

[1] Exhibit 1 consists of excerpts from McDonald's Franchise Disclosure Document ("FDD"). The Court may consider the FDD and the standard McDonald's franchise agreement that is attached to it because the complaint liberally references and quotes from those documents, and they are central to Plaintiff's claims (*e.g.*, FAC ¶¶ 11, 74-677 86-87,112). *See Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013); *Allstate Indem. Co. v. ADT LLC*, 110 F. Supp. 3d 856, 860 (N.D. Ill. 2015).

[2] The McOpCo companies are wholly-owned subsidiaries of McDonald's USA, LLC. *See* FAC ¶¶ 21, 24; Ex. 1, McDonald's Franchise Disclosure Document, at Item 1, page 1.

FAC ¶¶ 13, 59, 70.  Sometime in 2015, Plaintiff allegedly applied for an open departmental manager position at a McOpCo company restaurant in Orlando, Florida, and spoke with the manager of that restaurant.  *Id.* ¶¶ 66-68.  The day after her conversation with the manager, Plaintiff allegedly received a call from "a McDonald's corporate employee," who told her that the McOpCo restaurant could not hire her unless she was "'released' by the Bam-B franchise."  *Id.* ¶ 68.  Plaintiff allegedly asked her supervisors at Bam-B to "release" her so she could pursue the opportunity at the McOpCo restaurant, but her supervisors purportedly informed her that Bam-B would not release her because she was "too valuable."  *Id.* ¶ 69.  In January 2016, believing that "it would be futile to obtain employment in another McDonald's store," Plaintiff quit her Bam-B job and began working for Hobby Lobby.  *Id.* ¶¶ 70-71.

Plaintiff seeks to represent a nationwide class of every person who ever worked at a McDonald's restaurant.  FAC ¶ 117.  She asserts claims under the federal Sherman Antitrust Act, 15 U.S.C. § 1, and two Illinois statutes, the Illinois Antitrust Act, 740 ILCS 10/1, *et seq.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*

## ARGUMENT

### I.      Rule 12(b)(6) Motion To Dismiss Standard

To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "[F]ormulaic recitation of the elements of a cause of action" is not sufficient.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (dismissing Sherman Act claim for failure to state a cause of action).  Factual allegations are presumed true, but "legal conclusion[s] couched as a factual allegation" are not.  *Id.* (internal marks omitted).

Plausibility entails a "moderately high likelihood of [the alleged violation] occurring." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 629 (7th Cir. 2010). Moreover, "[f]or complaints involving complex litigation—for example, antitrust [ ] claims—a fuller set of factual allegations may be necessary to show that relief is plausible." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). Particularly in light of the expense and burden of antitrust actions, courts "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Twombly*, 550 U.S. at 558 (citation and internal quotation marks omitted).

## II. The Complaint Fails To State A Claim Under The Sherman Act.

### A. Sherman Act Standards

A Sherman Act Section 1 claim, 15 U.S.C. § 1, has three elements: "(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in [a] relevant market; and (3) an accompanying injury." *Agnew*, 683 F.3d at 335. "Courts have established three categories of analysis—*per se*, quick-look, and Rule of Reason—for determining whether actions have anticompetitive effects." *Id.* at 335.

The *per se* analysis presumes a restraint is unreasonable "without elaborate inquiry as to the precise harm [it has] caused or the business excuse for [its] use." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958). "The *per se* rule is designed for cases in which experience has convinced the judiciary that a particular type of business practice has no (or trivial) redeeming benefits ever." *In re Sulfuric Acid Antitrust Litig.*, 703 F.3d 1004, 1011-12 (7th Cir. 2012). "*Per se* rules of illegality are appropriate *only* when they relate to conduct that is manifestly anticompetitive," such as agreements between horizontal competitors to set prices. *Sylvania, Inc.*, 433 U.S. at 49–50 (emphasis added). "Resort to *per se* rules is confined to restraints . . . that would

always or almost always tend to restrict competition," and lack "any redeeming virtue." *Leegin*,

551 U.S. at 886 (internal quotation marks omitted). The same is true for the "quick look" analysis.[3]

The rule of reason, by contrast, requires a much broader inquiry into both a restraint's

reasonableness and the effects on interbrand competition. This analysis of the reasonableness of

a restraint includes consideration of "the facts peculiar to the business in which the restraint is

applied, its condition before and after the restraint was imposed; the nature of the restraint and its

effect, actual or probable. The history of the restraint, the evil believed to exist, the reason for

adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts."

*Sylvania, Inc.*, 433 U.S. at 49 n.15. The presumption in antitrust cases is that the rule of reason

applies. *Texaco Inc.*, 547 U.S. at 5 ("[T]his Court presumptively applies rule of reason analysis.");

*Agnew*, 683 F.3d at 335 (rule of reason is "[t]he standard framework").

Critically here, controlling Supreme Court precedent mandates that the rule of reason

governs vertical restraints, including where such restraints are agreed to in a franchise context.

*Sylvania, Inc.*, 433 U.S. at 50 (rule of reason applies to vertical non-price restraints imposed by a

franchisor); *Leegin*, 551 U.S. at 891 (rule of reason applies to vertical price restraints). That is

because the primary purpose of the antitrust laws is to promote *inter*brand competition, whereas

vertical restraints typically restrain only *intra*brand competition, and reductions in *intra*brand

competition—even intrabrand *price* competition—can actually foster *inter*brand competition by

encouraging retailers to invest in services and expertise in the promotion of one brand over another.

*Sylvania, Inc.*, 433 U.S. at 55 (vertical territorial restrictions in franchise agreements include

---

[3] The "quick-look" analysis, like the *per se* standard, does not apply to restraints that have procompetitive justifications and with which the judiciary does not have extensive experience. *Agnew*, 683 F.3d at 336; *Chicago Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 961 F.2d 667, 674 (7th Cir. 1992); *see also Cal. Dental Assoc. v. FTC*, 526 U.S. 756, 773, 775 (1999) (quick look inapplicable because "it is not implausible" that procompetitive benefits would outweigh any costs to competition).

"redeeming virtues" that "promote interbrand competition"); *Leegin*, 551 U.S. at 890-91 (vertical price restraints may be necessary to "enhance interbrand competition"). These economic effects are particularly acute in a franchise context, like McDonald's. *See*, *e.g.*, *Sylvania, Inc.*, 433 U.S. at 55 & n.26 (vertical territorial restraints in franchise system can "induce competent and aggressive retailers to make . . . investment[s] of capital and labor" and noting that "per se rules in this area may work to the ultimate detriment of the small businessmen who operate as franchisees").

### B. Plaintiff Fails To Plead A Plausible Sherman Act Claim Under Any Standard

Plaintiff purports to plead a *per se* (or, alternatively, a quick look) Sherman Act claim. FAC ¶ 133. But those standards do not apply to restraints on employment within a franchise context. Nor has Plaintiff pleaded a plausible horizontal agreement that removes her claim from rule of reason scrutiny. And because Plaintiff has not even attempted to plead the elements of a rule of reason claim, her Sherman Act claim should be dismissed.

### 1. The *Per Se* Standard Does Not Apply To Restraints On Employment Within The Franchise Context

The Seventh Circuit has long held that employee no-hire agreements between horizontal competitors "are tested by a standard of reasonableness." *See Nichols*, 371 F.2d at 333-34, 337 (requiring consideration of "whether reasonable latitude may be afforded to protect some legitimate interest of the employers" that agreed not to hire each other's employees until six months after termination). And a no-hire agreement *virtually identical to the one here*, used in the context of a franchise system, was recognized to fulfil the rational economic purpose of "prevent[ing] the franchises from 'raiding' one another's management employees after time and expense have been incurred in training them." *Williams*, 794 F. Supp. at 1029, 1031 (concluding that members of Jack-in-the-Box franchise system could not conspire among themselves because

"[i]n a fast-food franchise the franchisor does everything to promote a uniform, non-competitive environment between the franchises" and the "'no-switching' agreements [in the Jack-in-the-Box franchise contracts] do not involve anyone outside the Jack-in-the Box system"), *aff'd*, 999 F.2d 445, 448 ("[T]he no-switching agreement is not anticompetitive and thus does not establish a section 1 claim.").

Other courts agree that employee no-hire and non-solicitation agreements ancillary to otherwise procompetitive ventures can have procompetitive benefits and, thus, must be evaluated according to the rule of reason. *See*, *e.g.*, *Eichorn*, 248 F.3d at 143-46 (applying rule of reason to no-hire agreement among competitors, concluding it was reasonable to ensure workforce continuity during sale of subsidiary); *Bogan v. Hodgkins*, 166 F.3d 509, 515 (2d Cir. 1999) (plaintiffs' "allegations do not trigger *per se* treatment because the [no-hire agreement] does not fit into any of the established *per se* categories"); *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 899-900 (9th Cir. 1983) (agreement not to "raid" a former employer's staff was not an unreasonable restraint); *Coleman v. Gen. Elec. Co.*, 643 F. Supp. 1229, 1243 (E.D. Tenn. 1986) (no-hire agreement only precluded employees from selling their services to one corporation so it had a "de minimus impact on the employment market in general," and the *per se* rule was "wholly inapplicable"), *aff'd*, 822 F.2d 59 (6th Cir. 1987); *Cesnik*, 490 F. Supp. at 866-67 (rejecting *per se* standard where no-hire agreement had obvious procompetitive justifications). Many of these cases "properly characterize[ ] the no-hire agreement as a common law covenant not to compete," *Eichorn*, 248 F.3d at 144, which, when ancillary to a procompetitive venture or transaction, the Seventh Circuit recognizes deserves rule of reason treatment, *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 265 (7th Cir. 1981) ("The recognized benefits of reasonably enforced noncompetition covenants are by now beyond question."); *see also Polk Bros., Inc. v. Forest City*

*Enters., Inc.*, 776 F.2d 185, 189 (7th Cir. 1985) (rule of reason applies because noncompetition covenants encourage employers to "train the employee, giving him skills, knowledge, and trade secrets that make the firm more productive").

Plaintiff's conclusory characterization of thousands of vertical McDonald's franchise contracts as a "naked horizontal" conspiracy "between and among McDonald's and its franchisees" cannot shoehorn this quintessential rule of reason claim into a viable *per se* antitrust claim. FAC ¶¶ 1, 14. Regardless of whether the agreements are characterized as vertical or horizontal, application of the *per se* rule is limited to agreements so pernicious that they can never be justified, so no inquiry into the reason for the agreements is required. *Leegin*, 551 U.S. at 886; *see also In re Sulfuric Acid Antitrust Litig.*, 703 F.3d at 1010-11 ("[W]e know from [established precedent] that even price fixing by agreement between competitors—and . . . other agreements that restrict competition, as well—are governed by the rule of reason, rather than being *per se* illegal, if the challenged practice when adopted could reasonably have been believed to promote 'enterprise and productivity.'"). For example, the defendants in *Nichols* were horizontal competitors selling encyclopedias who also competed for salespeople from the same labor pool, yet the Seventh Circuit held that their no-hire agreement could have plausible procompetitive benefits for "the business of supplying encyclopedias" and, thus, must be judged under the standard of reasonableness. 371 F.2d at 333-34, 337.

Because multiple courts have held that no-hire agreements, especially restrictions like those allegedly in Paragraph 14 of the McDonald's franchise contracts, have obvious (not just *plausible*) procompetitive benefits—namely here, incentivizing franchisees to invest in labor, securing properly and fully staffed operations, and thereby promoting interbrand competition, *see*,

*e.g.*, *Williams*, 794 F. Supp. at 1029, 1031—under no set of facts can Plaintiff challenge them as *per se* unlawful.

### 2.  Plaintiff Fails To Allege A Plausible Horizontal Agreement

In any event, the Amended Complaint does not describe a plausible horizontal agreement as a matter of law.  Franchise contracts are unquestionably *vertical*, and there are no factual allegations here describing how the alleged McDonald's franchise contracts possibly could have morphed into a horizontal agreement.[4]  For example, the complaint includes no allegations regarding the "who, what, when, where, and how"—as required by *Iqbal*, 556 U.S. at 678-80, and *Twombly*, 550 U.S. at 556-57—to establish that even two, let alone thousands, of franchisees and McOpCo company restaurants dispersed across the U.S. reached a meeting of the minds concerning hiring practices or salaries.  The complaint also does not allege when the supposed horizontal agreement was consummated, who specifically consummated it, or how or where it was consummated.  Apparently, Plaintiff's theory is that simply by virtue of the mere *existence* of Paragraph 14 in the franchise contracts between McDonald's and its franchisees, every single one of the thousands of McDonald's franchisees and McOpCo company restaurants throughout the history of the company somehow also independently and tacitly agreed with each other to suppress

---

[4] The alleged franchise contracts are between different levels of the McDonald's franchise system (franchisor and franchisees (FAC ¶ 11)), do not include McOpCo companies as parties, and do not restrict inter-brand competition at all.  *See Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 671 n.1 (7th Cir. 1985) (observing that "[a] franchiser and its franchisees are part of a business organization not altogether different from vertical integration" and applying rule of reason and market power analysis in Section 1 case); *see also Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 720 (11th Cir. 1984) ("[R]estrictions of a 'vertical' nature (between the parties at different levels of the market structure)—such as those which may be contained in franchising agreements—are analyzed under a rule of reason, because they promote interbrand competition by allowing the franchisor or manufacturer to achieve certain efficiencies in the distribution of his goods and services."); *Krehl v. Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1356 (9th Cir. 1982) (applying rule of reason to vertical restraints in franchise agreements); Philip Areeda & Herbert Hovenkamp, Fundamentals of Antitrust Law at 7-127 ("Vertical integration can [ ] be said to exist at different levels of intensity or control. . . .  *A good example is a franchise arrangement such as McDonald's*.") (emphasis added).

Defendants' Memorandum In Support Of Motion To Dismiss Amended Complaint - Page 11

wages and restrict employee hiring. That is simply implausible on its face. *Cf. Kelsey K. v. NFL Enters. LLC*, No. C 17-00496 WHA, 2017 WL 3115169, at *2 (N.D. Cal. July 21, 2017) (existence of no-hire clause in National Football League bylaws insufficient to plead antitrust claim).

One need look no further than the complaint itself for allegations that render this supposed massive conspiracy implausible. The complaint alleges that the McDonald's franchise and McOpCo restaurants "colluded to suppress [ ] wages," yet also that the only other McDonald's restaurant from which Plaintiff sought employment offered to pay her 23% more than her then-current employer. FAC ¶¶ 1, 5, 67. That contradiction alone makes the conspiracy theory implausible because *by definition* differential wages could not occur if there were an effective wage suppression agreement. Plaintiff's alleged inability to get the job she wanted has no bearing on that fundamental and glaring contradiction because common sense dictates that many factors affect wages (including the scope of the relevant labor market, see *infra* Part II.B.3), so wages could not have been suppressed based merely on no-hire agreements between employers. And while the complaint alleges that Paragraph 14 of the franchise contract "is short-sighted and ultimately not in the independent interests of the franchisees or the McOpCo restaurants" (FAC ¶ 102), that is undermined by the allegation that franchise operators provided extensive training to their employees (*id.* ¶¶ 63-64). That of course is the point: incentivizing each franchise operator to invest in its own employees and preventing in-fighting within the McDonald's system—precisely what Paragraph 14 does—is in every operator's self-interest because it strengthens the McDonald's brand.

Notably, the complaint's *only* allegations about *specific* restaurants—Bam-B and the Orlando McOpCo restaurant—do not establish that they ever talked to each other (or even knew about each other outside of Plaintiff's supposed communications to each of them). FAC ¶¶ 66-68.

Instead, Plaintiff alleges that "the 'no-solicit' and 'no-hire' agreement . . . was adhered to by both" of them. *Id.* ¶ 101. But parallel adherence to a vertical restriction in a franchise system does not create, or even imply, a horizontal restraint of trade. If it did, any dual-distribution system that imposed lawful vertical restraints such as resale price maintenance on franchisees and retailers could become *per se* illegal under the antitrust laws. The Seventh Circuit has firmly rejected this approach to *per se* liability. *Illinois Corp. Travel, Inc. v. Am. Airlines, Inc.*, 889 F.2d 751, 753 (7th Cir. 1989) ("Dual distribution therefore does not subject to the per se ban a practice that would be lawful if the manufacturer were not selling direct to customers; antitrust laws encourage rather than forbid this extra competition.").

The Amended Complaint also alleges that "a McDonald's corporate employee" called Plaintiff to explain that she had to be "released" by Bam-B to work for the McOpCo restaurant. *Id.* ¶ 68. That allegation, of course, suggests no broad-based horizontal agreement among all restaurants (franchisee and company-owned alike). Indeed, nothing in Paragraph 14 of the franchise contract speaks to or suggests such a "release." In fact, all that Plaintiff alleges is that Bam-B declined to terminate her. *Id.* ¶¶ 68-69. Bam-B's refusal to do something it had no obligation to do does not raise any plausible inference of an agreement with the McOpCo restaurant, much less an agreement with *all* McDonald's restaurants.

As for the thousands of alleged vertical franchise contracts that Plaintiff arguably pleads, the complaint includes no other allegations that would permit an inference that they *reflect* a horizontal agreement to suppress wages. Plaintiff alleges that "[f]ranchises are made available on standardized terms, so a franchisee who enters into a franchise agreement knows that the same terms it has agreed-to also apply to other franchisees." FAC ¶ 85. But franchisees' mere knowledge of common vertical restraints within a franchise system does not evidence a horizontal

conspiracy. If that were the law, manufacturers imposing resale price maintenance terms on their retailers would find themselves suddenly accused of *per se* price fixing conspiracies the moment their retailers learned that other retailers were subject to the same terms. *Cf. Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1340-42 (11th Cir. 2010) (rejecting *per se* horizontal price-fixing conspiracy claim where dual-distributor manufacturer utilized resale price maintenance with its retailers).

Perhaps realizing that her allegations of a horizontal agreement are both conclusory and implausible, Plaintiff includes a section in the complaint titled "Other Evidence of a Horizontal Agreement [A]mong Competing Franchisees and McDonald's," in which she alleges that (1) Defendants made statements that McDonald's success depends on its franchise system's ability to recruit and retain a quality workforce, (2) there is a question on an online McDonald's employment application about previous work experience at other McDonald's restaurants, and (3) there are restaurant industry "norms" disfavoring hiring other companies' employees. FAC ¶¶ 97-101. Presumably, Plaintiff will argue that these allegations qualify as "plus factors," which courts sometimes use to infer a price fixing agreement among competitors based on parallel behavior. *See, e.g., In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 360 (3d Cir. 2004). But plus factors are usually reserved for the identification of secret price-fixing conspiracies, not for cases where the existence of non-price *vertical* restraints (like the franchise term here) are widely adopted and undisputed. *See In Re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 655-57 (7th Cir. 2002). And in any event, these allegations do not contain such plus factors. Defendants' statements about the success of the McDonald's system and a question on an online McDonald's employment application say nothing about the conduct of *the franchisees or McOpCo restaurants*, and thus do not permit an inference that there was a horizontal agreement among

them. Similarly, reference to restaurant industry "norms" is so general as to be meaningless in this context—it is not tethered to McDonald's conduct or that of any McDonald's restaurant.

The law is clear: "[t]he mere fact that large numbers of retailers agreed to [deals with the defendant] is not sufficient to support an inference of a horizontal agreement among retailers." *Menasha Corp. v. News Am. Mktg. In-Store*, 238 F. Supp. 2d 1024, 1033 (N.D. Ill. 2003), *aff'd* 354 F.3d 661 (7th Cir. 2004); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 348-49 (3d Cir. 2010) (allegations of substantially similar agreements among groups of defendants were insufficient to allege a global conspiracy); *Twombly*, 550 U.S. at 556 (plaintiff must plead "enough factual matter (taken as true) to suggest that an agreement was made. . . . [A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice."). Plaintiff's arguments are even weaker in the franchise context, where cooperation and uniformity are expected. *Chicago Prof'l Sports Ltd.*, 95 F.3d at 598. Plaintiff has failed to plead a plausible horizontal agreement. And even if she had, she has failed to plead the type of agreement that is so clearly anticompetitive that it has convinced the judiciary it can have "no redeeming benefits ever." *In re Sulfuric Acid Antitrust Litig.*, 703 F.3d at 1011-12. Any suggestion of a *per se* claim fails.

### 3.    The Complaint Does Not Allege A Rule Of Reason Violation

Plaintiff has pleaded only a *per se* claim or, in the alternative, a quick look claim, neither of which applies here. Plaintiff has in fact now twice elected to allege only a *per se* or quick look claim and, in that context, there is no reason to evaluate her claim under the rule of reason. *See Texaco Inc.*, 547 U.S. at 6 n.2; *see also AT&T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 531 (3d Cir. 2006) ("[Plaintiff] could have argued that the restraint at issue ought to be analyzed under the traditional rule of reason rather than attempt to squeeze the restraint into the *per se* realm. [Plaintiff], however, did not. Accordingly, [Plaintiff] failed to state a claim pursuant to the

Sherman Act."). Plaintiff's Sherman Act claim accordingly is properly dismissed with prejudice on that ground.

Moreover, she has not come close to pleading a violation of the antitrust laws under the rule of reason standard in any event. To plead a rule of reason violation, a plaintiff must allege "that an agreement or contract has an *anticompetitive effect* on a given *market* within a given *geographic area*." *Agnew*, 683 F.3d at 335 (emphasis added) (affirming dismissal of Section 1 claim under Rule 12(b)(6) for failing to plead plausible relevant product market). "The Rule of Reason analysis involves the showing of a precise market definition in order to demonstrate that a defendant wields market power, which, by definition, means that the defendant can produce anticompetitive effects." *Id.* at 337; *see also Valley Liquors, Inc. v. Renfield Imps., Ltd.*, 822 F.2d 656, 666 (7th Cir. 1987) ("[P]laintiff must show that the defendant has market power—that is, the ability to raise prices significantly without going out of business—without which the defendant could not cause anticompetitive effects on market pricing."); *Phillips Getschow Co. v. Green Bay Brown Cty. Prof'l Football Stadium Dist.*, 270 F. Supp. 2d 1043, 1051 (E.D. Wisc. 2003) (concluding "that the complaint fails to allege an antitrust violation, either per se or under the rule of reason"). Here, the complaint does not allege a plausible product or geographic market, much less market power.

A product market is defined by identifying the reasonable interchangeability of a set of products and the cross-elasticity of demand for those products. *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 394–95 (1956); *Photovest Corp. v. Fotomat Corp.*, 606 F.2d 704, 713 (7th Cir. 1979). Typically, a relevant *labor* market for antitrust purposes is all the competing employers that provide jobs that are reasonable substitutes. *Eichorn*, 248 F.3d at 147.

The complaint here does not purport to identify any competing jobs that are reasonably interchangeable with employment at McDonald's, the quantity of McDonald's jobs compared to other types of jobs (either in the U.S. or even a given geographic region), or anything about cross-elasticity of demand for jobs. Instead, Plaintiff appears to allege that a single-brand market for McDonald's-only labor exists. FAC ¶¶ 110-114. Courts almost never limit a relevant product market to a single product, *E. I. du Pont de Nemours & Co.*, 351 U.S. at 393, and when they do, it is typically only in "locked-in" aftermarket cases where the issue is the servicing or parts for a manufacturer's products, *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 418 (5th Cir. 2010), or in other cases of highly specialized products, *House of Brides, Inc. v. Alfred Angelo, Inc.*, No. 11-7834, 2014 WL 64657, at *5-7 (N.D. Ill. Jan. 8, 2014) (dismissing Sherman Act claim for failure to allege a plausible relevant product market). Single brand product allegations are particularly disfavored in the Seventh Circuit and are properly dismissed at the pleadings stage. *See Sheridan v. Marathon Petroleum Co. LLC*, 530 F.3d 590, 595 (7th Cir. 2008) ("Marathon does of course have a 'monopoly' of Marathon franchises. But 'Marathon' is not a market …."; affirming dismissal); *see also*, *e.g.*, *Generac Corp. v. Caterpillar Inc.*, 172 F.3d 971, 977 (7th Cir. 1999) (where alleged market was for single brand of product, affirming dismissal); *Digital Equip. Corp. v. Uniq Digital Techs., Inc.*, 73 F.3d 756, 763 (7th Cir. 1996) (stating that "[o]ne could hardly imagine a weaker case for the claim that DEC's computers are a market unto themselves" and affirming dismissal).

Whatever the relevant product market is for this case, it is clearly not limited solely to McDonald's jobs. *Cf. Eichorn*, 248 F.3d at 147 (market for the plaintiff's labor is much broader than merely defendant's employment); *Subsolutions, Inc. v. Doctor's Assocs.*, 62 F. Supp. 2d 616, 625 (D. Conn. 1999) (Subway franchises is not a sufficient product market). Just as no consumer

is ever locked in to buying only one brand of hamburgers, it is hard to imagine a person *ever* being locked into employment with only one type of restaurant.[5]  Plaintiff alleges no facts to support her conclusion that "the education, training and experience within the McDonald's enterprise are unique to McDonald's and not transferrable to other restaurants."  FAC ¶ 110.  Conspicuously, she alleges no facts about any particular McDonald's employee that is supposedly trapped within the McDonald's system, unable to obtain employment elsewhere.  And Plaintiff's concession that she now works at Hobby Lobby flatly contradicts any lock-in theory.  *Id.* ¶ 71.

Plaintiff also does not define a relevant geographic market (other than that she seeks to represent a nationwide class), which matters a great deal because there can be countless differences between regional or local labor markets.  *See Law Bulletin Pub. Co. v. Rodgers*, No. 87 C 873, 1987 WL 16617, at *3 (N.D. Ill. Sept. 1, 1987) ("It is well established that under either section 1 or section 2 of the Sherman Act, an antitrust plaintiff must plead relevant product and geographical markets. . . . A failure to do so results in dismissal of an antitrust claim."); *Besser Pub. Co. v. Pioneer Press, Inc.*, 571 F. Supp. 640, 641 (N.D. Ill. 1983) (dismissing complaint for failure to plead relevant geographic market).  And, having failed to allege a plausible product and geographic market, Plaintiff does not even make an effort to allege factually how Defendants have market power.  *See Sheridan*, 530 F.3d at 595 ("[T]he plaintiffs' naked assertion of [defendants']

---

[5] *See Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001) ("Cases in which dismissal on the pleadings is appropriate frequently involve . . . failed attempts to limit a product market to a single brand [or] franchise." (citing cases holding that a single brand is not its own product market)); *Int'l Equip. Trading, Ltd. v. AB SCIEX LLC*, No. 13-1129, 2013 WL 4599903, at *11 (N.D. Ill. Aug. 29, 2013) (the "court should dismiss the complaint" when it "limits the relevant market to a 'single brand'"); *Marion HealthCare LLC v. S. Ill. Healthcare*, No. 12-00871, 2013 WL 4510168, at *11 (S.D. Ill. Aug. 26, 2013) (dismissing antitrust claim because, "[w]ithout a well-defined relevant market, a court cannot determine the effect that an allegedly illegal act has on competition"); *In re Dairy Farmers of Am., Inc.*, 767 F. Supp. 2d 880, 901 (N.D. Ill. 2011) (dismissing Sherman Act claims under Rule 12(b)(6) because the alleged relevant market was legally insufficient); *see also Waffle House*, 734 F.2d at 720 ("[W]hatever the relevant market is here, it is a great deal broader than the Waffle House system and encompasses much, if not all, of the fast food industry.").

'appreciable economic power'—an empty phrase—cannot save the complaint.").  For all of these reasons, the complaint would properly be dismissed, with prejudice, under the *per se*, quick look, and rule of reason standards.

## III.  The Complaint Fails To State Illinois State Law Claims

### A.  The IAA Does Not Permit Claims Based On Labor

Count II of the complaint alleges that Defendants "engaged in unlawful contracts, combinations, and/or conspiracies in restraint, trade [sic] or commerce in violation of Illinois Antitrust Act, 740 ILCS 10/1, *et seq*." by lessening competition "in the market for McDonald's employees and/or managers."  FAC ¶¶ 139-142.  But section 10/4 of the IAA expressly states that "'[t]rade or commerce' includes all economic activity involving or relating to any commodity or service. . . .  'Service' shall not be deemed to include labor which is performed by natural persons as employees of others."  740 ILCS 10/4.  Thus, claims related to an alleged market for labor services "are specifically excluded by § 10/4 of the Act."  *O'Regan*, 121 F.3d at 1066 (affirming dismissal on § 10/4 grounds of IAA claim based on employment restrictive covenant).

Plaintiff's allegation that Paragraph 14 of the franchise contract was "not an agreement involving traditional labor disputes" (FAC ¶ 140) is clearly a legal argument meant to try to plead around Section 10/4.  As such, this Court may ignore it.  *See Twombly*, 550 U.S. at 555 ("legal conclusion[s] couched as a factual allegation" need not be presumed true).

Finally, "federal courts (and Illinois state courts) use federal law in construing provisions of the [IAA] that are substantially similar to federal law," *Marion Healthcare*, 2013 WL 4510168, at *14, so, to the extent Count I is dismissed, Count II also should be dismissed, *Appraisers Coal. v. Appraisal Inst.*, 845 F. Supp. 592, 608 (N.D. Ill. 1994).  Plaintiff has no possibly cognizable IAA claim, so Count II should be dismissed with prejudice.

### B. The ICFA Claim Also Fails For Numerous Reasons

Plaintiff cannot convert the ICFA into a backdoor enforcement mechanism for an antitrust claim not cognizable under the IAA. *Gaebler*, 285 Ill. App. 3d at 544 (quintessential antitrust claims "must be brought under the Antitrust Act and not the Consumer Fraud Act"). The Illinois Supreme Court has rejected such gamesmanship because "[t]o construe the [ICFA] to give a cause of action . . . that the legislature refused to give under the Antitrust Act would be incongruous." *Laughlin v. Evanston Hosp.*, 133 Ill. 2d 374, 390-91 (1990).

Moreover, the ICFA does not apply to this case because there are no allegations of "conduct that defrauds or deceives consumers." *Laughlin*, 133 Ill. 2d at 390; *see also Appraisers Coal.*, 845 F. Supp. at 608 (the ICFA "purports to prohibit all unfair methods of competition, but has been restricted to deceptive practices" used against consumers). The employees of McDonald's brand restaurants are not consumers in this context; if anything, they are *suppliers* of labor services. *See Hess v. Kanoski & Assocs.*, 668 F.3d 446, 454 (7th Cir. 2012) (plaintiff "was an employee, not a 'consumer,'" and therefore had no ICFA claim); *see also* 815 Ill. Comp. Stat. 505/1(e) (defining "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household"). Nor are there any allegations in the complaint that tie this case to the actual consumers of McDonald's brand restaurants—*i.e.*, restaurant customers. *See Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 912 (N.D. Ill. 2012) (considering whether a case has a consumer nexus). Plaintiff's new allegation—that competition among employers "may create more or better goods and services" and "will lessen the strain on public benefits" from fast-food employees who currently rely on public assistance—certainly does not do so. FAC ¶ 109. Nothing about that attenuated and unsupported theory articulates how Plaintiff's actions were "akin to a consumer's actions," or how the alleged conspiracy involving employment restraints

was directed at consumers. *Thrasher-Lyon*, 861 F. Supp. 2d at 912.

Moreover, the Illinois Supreme Court has made clear that out-of-state plaintiffs (like Plaintiff here) involved in out-of-state transactions cannot bring suit under the ICFA. "[T]he circumstances that relate to the disputed transaction [must] occur primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 186–87 (2005); *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009). In *Avery*, as here, even though the relevant company policy was created in Illinois, the "disputed transactions . . . occurred outside of Illinois for the out-of-state plaintiffs," so the ICFA did not apply. 216 Ill. 2d at 186-87. Here, although Plaintiff alleges that the McDonald's franchise agreements were drafted and entered in Illinois and had other Illinois-specific provisions, FAC ¶ 19, the "transaction" affecting her occurred entirely in Florida, *id.* ¶ 66-69. Accordingly, and for the reasons stated above, the ICFA provides no cause of action for Plaintiff, so Count III should be dismissed with prejudice.

## IV. Plaintiff Lacks Standing To Assert Claims For Injunctive Or Declaratory Relief.

Plaintiff's claims for injunctive and declaratory relief, to the extent any claims remain, should be dismissed. FAC ¶¶ 18, 162 & Prayer For Relief. Plaintiff lacks standing to request such relief because she is a *former* employee. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2559-60 (2011) (class members who were "no longer employed by Wal-Mart lack standing to seek injunctive or declaratory relief against its employment practices"). Because plaintiff lacks standing to seek this relief, her claims for it should be dismissed.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court dismiss Plaintiff's Amended Complaint with prejudice. Defendants also respectfully request that the Court schedule an oral argument on Defendants' motion to dismiss.

Dated:  October 2, 2017

Respectfully submitted,

**McDONALD'S USA, LLC and**
**McDONALD'S CORPORATION**

By:      /s/ Rachel S. Brass
           Rachel S. Brass

GIBSON DUNN & CRUTCHER LLP

D. Jarrett Arp (admitted pro hac vice)
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539
Email: JArp@gibsondunn.com

Rachel S. Brass (admitted pro hac vice)
555 Mission St., Suite 3000
San Francisco, California 94105
Telephone: (415) 393-8200
Facsimile: (415) 374-8458
Email: RBrass@gibsondunn.com

Matthew C. Parrott (admitted pro hac vice)
3161 Michelson Dr.
Irvine, CA 92612
Telephone: (949) 451-3800
Facsimile: (949) 451-4220
Email: MParrott@gibsondunn.com

A&G LAW LLC

Robert M. Andalman (Atty. No. 6209454)
Rachael Blackburn (Atty. No. 6277142)
542 S. Dearborn St.; 10th Floor Chicago, IL 60605
Tel.:  (312) 341-3900
Fax:  (312) 341-0700

## CERTIFICATE OF SERVICE

I, Rachel S. Brass, an attorney, hereby certify that the **DEFENDANTS'**

**MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S**

**FIRST AMENDED COMPLAINT** was electronically filed on October 2, 2017 and will be

served electronically via the Court's ECF Notice system upon the registered parties of record.


       /s/ Rachel S. Brass    
       Rachel S. Brass